**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: SOMETHING SWEET ACQUISITION, INC., *et al.*,<br><br>Debtors. | ) | Chapter 7<br>Bankr. No. 21-10992-CTG<br>(Jointly Administered) |
| LOEB TERM SOLUTIONS LLC and CAPITAL EQUIPMENT SOLUTIONS, LLC,<br><br>Appellants,<br>v.<br><br>PETERSON FARMS, INC. and FIRST CALL TRADING CORP. *d/b/a* THE PROGRAM,<br><br>Appellees. | ) | Adv. No. 23-50752 (CTG)<br><br>Civil Action No. 25-1414-JLH<br>(consolidated) |

Harley J. Goldstein, Ainsley G. Moloney, GOLDSTEIN & MCCLINTOCK LLLP, Chicago, IL; Aaron R. Harburg, GOLDSTEIN & MCCLINTOCK LLLP, Wilmington, DE;

*Counsel to appellants, Loeb Term Solutions LLC and Capital Equipment Solutions, LLC.*

June Monroe, FENNEMORE, LLP, Irvine, CA; Joseph H. Huston, Jr., Gregory T. Donilon, STEVENS & LEE, P.C., Wilmington, DE,

*Counsel to appellee, Peterson Farms, Inc.*

Kate Ellis, MCCARRON & DIESS, Washington, DC; Joseph H. Huston, Jr., Gregory T. Donilon, STEVENS & LEE, P.C., Wilmington, DE,

*Counsel to appellee, First Call Trading Corp. d/b/a The Program.*

**OPINION**

November 19, 2026

**HALL, U.S. DISTRICT JUDGE**

## I. INTRODUCTION

This appeal arises in the chapter 7 cases of Something Sweet Acquisition, Inc. and Something Sweet, Inc. (collectively, the "Debtors" or "Something Sweet"), with respect to an adversary proceeding filed by Peterson Farms, Inc. and First Call Trading Corp. d/b/a The Program (collectively, the "PACA Creditors") against the Debtors. On October 20, 2025, the Bankruptcy Court entered its Memorandum Opinion (Adv. D.I. 86)[1] (the "Opinion"), holding that the PACA Creditors are qualified trust creditors and beneficiaries under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e(c)(2), and directing distribution of funds held by the Chapter 7 Trustee to the PACA Creditors. On November 5, 2025, the Bankruptcy Court entered its Final Order and Judgment (Adv. D.I. 96) (the "Judgment"). Appellants Loeb Term Solutions LLC and Capital Equipment Solutions, LLC (together, "Appellants" or the "Loeb Entities") timely appealed, raising a host of issues with respect to the Bankruptcy Court's application of PACA's trust provision. For the reasons set forth herein, the Judgment will be affirmed.

## II. BACKGROUND

Debtors were manufacturers of baked goods which purchased produce items from the PACA Creditors. (Op. 1–2.) Debtors had been operating subject to the trust provision arising under the PACA since at least 2003. (Op. 18.) Appellants are secured lenders who extended credit to Debtors in reliance on a duly perfected security interest in all assets of Something Sweet Acquisition, Inc., including all of its machinery and equipment, and all related parts, tooling, and supporting systems. Appellants' collateral was owned by Something Sweet prior to the loans. (Op. 16.)

---

[1] The docket of the adversary proceeding, captioned *Peterson Farms, Inc. v. Something Sweet Acquisition, Inc.*, Adv. No. 23-50752 (CTG) (the "Adversary Proceeding") is cited herein as "Adv. D.I. __," and the docket of the chapter 7 case, captioned *In re Something Sweet Acquisition, Inc.,* No. 21-10992-CTG, is cited herein as "Bankr. D.I. __."

The PACA Creditors are produce suppliers that sold perishable agricultural products to the Debtors. As of the petition date, the PACA Creditors were owed the aggregate principal amount of $285,957.60, plus contractual interest. (Op. 4, 6.) The PACA Creditors contend that, by operation of PACA, the commodities and their proceeds were held in a statutory trust for their benefit. In September 2021, Debtors conducted an auction for the sale of substantially all of their assets. After receiving the proceeds from the sale and paying various administrative expenses, the Chapter 7 Trustee held approximately $455,000 (the "Funds"). (Op. 8–9.) It is undisputed that the Debtors did not segregate funds attributable to their produce transactions from other operating funds. Instead, all proceeds were commingled in operating and payroll accounts.

The PACA Creditors filed the adversary proceeding seeking enforcement of their rights under the trust provision of the PACA, 7 U.S.C. § 499e(c)(2), against Appellants, the Debtors, the Chapter 7 Trustee, and other alleged secured parties. (Adv. D.I. 1; Op. 9–10.) Appellants counterclaimed seeking a declaratory judgment that the Funds belonged to them. (Adv. D.I. 22; Op. 10.) Claims against all other parties were resolved, leaving for determination by the Bankruptcy Court the competing claims of Appellants and the PACA Creditors to the Funds held by the Trustee. (Op. 9–10.)

The Bankruptcy Court granted partial summary judgment in favor of the PACA Creditors, holding that they were beneficiaries of the PACA trust. (Op. 10–11.) A one-day bench trial on all remaining issues was held on August 15, 2025. (*Id.*) On October 20, 2025, the Bankruptcy Court issued the Opinion, ruling in favor of the PACA Creditors. (*Id.*) The Bankruptcy Court placed the burden on Appellants to demonstrate the funds were not subject to the PACA trust, notwithstanding the commingled nature of the Debtors' accounts. (Op. 17.) The Bankruptcy Court held that all Funds held by the Chapter 7 Trustee were held in statutory trust for their benefit, and therefore the PACA Creditors were entitled to full payment before any distribution to Appellants.

On November 3, 2025, Appellants filed a notice of appeal with respect to the Memorandum Opinion, "out of an abundance of caution," to ensure compliance with the deadline to appeal, as the form of judgment had not yet been settled by the parties. (Adv. D.I. 89.) On November 5, 2025, Judgment was entered in favor of the PACA Creditors. On November 19, 2025, Appellants filed a notice of appeal with respect to the Judgment. (Adv. D.I. 99.) On December 9, 2025, at the request of the parties, the Court entered an order consolidating the appeals. Civ. No. 25-1414-JLH, D.I. 3.[2] The consolidated appeal is fully briefed. (D.I. 12, 25, 26.) No party requested oral argument.

## III. JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction to hear an appeal from a final judgment of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1). "[A] bankruptcy court order ending a separate adversary proceeding is appealable as a final order even though that order does not conclude the entire bankruptcy case." *In re Odyssey Contracting Corp.*, 944 F.3d 483, 486 (3d Cir. 2019) (quoting *In re Prof'l Ins. Mgmt.*, 285 F.3d 268, 281 (3d Cir. 2002)). The Judgment is a final order.

This Court "review[s] the bankruptcy court's legal determinations de novo, its factual findings for clear error, and its discretionary decisions for abuse of discretion." *In re Alecto Healthcare Servs. LLC*, 184 F.4th 163, 169 n.7 (3d Cir. 2026) (quoting *In re Somerset Reg'l Water Res., LLC*, 949 F.3d 837, 844 (3d Cir. 2020). Appellants frame the issues on appeal as follows: (1) whether PACA, as applied by the court in awarding the PACA Creditors the right to payment of the entirety of the Funds held by the Chapter 7 trustee prior to Appellants' right to any payment from the Funds, comports with the United States Constitution (including, without limitation, the Fifth Amendment); and (2) whether the court's allocation of the burden of proof to Appellants to show the Funds were not subject to the PACA trust comports with the Constitution. Thus, the appeal is based on "purely legal issues

[2] The docket of the lead appeal, Civ. No. 25-1414-JLH, is cited herein.

concerning the constitutional limits on the application of PACA and the allocation of the burden of proof in proceedings affecting secured property interests." (D.I. 12 at 9–10.)

## IV. ANALYSIS

Appellants' briefing is long on words, but short on substance. The gist of the argument is that it is unfair—and unconstitutional—to pay the PACA Creditors before Appellants because the latter have a perfected security interest in the assets of the Debtors. According to Appellants, "statutory schemes and common law doctrines that affect property rights must be constrained where their application would extinguish or reallocate secured interests in a manner that raises due process concerns." (*See* D.I. 12 at 2–5.) Although the Bankruptcy Court's application of PACA's trust provision comports with well-settled law, Appellants point out that "bankruptcy law has repeatedly shown that doctrines and statutory frameworks may operate for years, sometimes decades, before courts recognize their constitutional infirmities." (*Id.* at 5–6 (citing *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 54, 87 (1982), and *Stern v. Marshall*, 564 U.S. 462, 503 (2011).) The result here, Appellants assert, "cannot be reconciled with settled constitutional and bankruptcy principles," as "neither the Constitution nor the Bankruptcy Code permits the complete elimination of a secured creditor's property interest without compensation, protection, or due process." (*Id.* at 7.) Appellants say that the Bankruptcy Code permits the use, encumbrance, or even priming of collateral only where the secured creditor receives the value of its interest, i.e., "adequate protection" or the "indubitable equivalent." (*Id.*) Appellants say that the Judgment here "did not merely modify Appellants' rights; it extinguished them entirely, without providing any substitute protection." (*Id.*)

The PACA Creditors, on the other hand, assert that Congress enacted PACA's statutory trust provision to address the precise financing arrangement at issue here: produce buyers purchasing produce on credit, failing to pay produce suppliers, and then allowing secured lenders to obtain trust

funds ahead of unpaid produce sellers. (D.I. 25 at 4.) "PACA resolves that problem by creating a non-segregated floating trust for the benefit of unpaid produce suppliers until they are paid in full. Courts have enforced that trust priority for decades, including expressly against secured lenders." (*Id.*) According to the PACA Creditors, Appellants' constitutional arguments rest on false premises. The PACA Creditors say that Appellants are not the victims of any violation of the Takings Clause of the Fifth Amendment because the Bankruptcy Court did not strip them of property, recharacterize their collateral or lien rights, or retroactively destroy a vested property right. Rather, the PACA Creditors assert, Appellants' lien was always limited by superior PACA trust rights, as PACA was enacted decades before Appellants' 2019 lending relationship with Something Sweet, and Something Sweet had been operating subject to PACA long before Appellants extended credit. Thus, Appellants could not have had a reasonable investment-backed expectation that their liens would prime the interests of PACA trust beneficiaries in PACA trust assets. (*Id.* at 4–5.) Finally, the PACA Creditors contend that the procedural framework rests on the rationale that once the existence of the PACA trust is established, the secured lender claiming it has a superior right to the produce buyer's property is best positioned to show such property is free from the trust, and placing the burden on Appellants to demonstrate the funds were not subject to the PACA trust did not violate their right to due process. (*Id.* at 5.)

## A. The Bankruptcy Court Correctly Applied PACA

### 1. PACA Creates a Statutory Trust That Primes Secured Lenders by Operation of Federal Law

In enacting PACA's trust provision, Congress determined:

> It is hereby found that a ***burden on commerce in perishable agricultural commodities is caused by financing arrangements*** under which commission merchants, dealers, or brokers, who have not made payment for perishable agricultural commodities purchased, contracted to be purchased, or otherwise handled by them on behalf of another person, ***encumber or give lenders a security interest in,*** such

> commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of such commodities or products, and that ***such arrangements are contrary to the public interest. This subsection is intended to remedy such burden*** on commerce in perishable agricultural commodities and to protect the public interest.

7 U.S.C. § 499e(c)(1) (emphasis added). To remedy this problem, Congress created the PACA statutory trust, as follows:

> ***Perishable agricultural commodities*** received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, ***and any receivables or proceeds from the sale*** of such commodities or products, ***shall be held*** by such commission merchant, dealer, or broker ***in trust for the benefit of all unpaid suppliers or sellers*** of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2); *Bear Mountain Orchards, Inc. v. Mich-Kim, Inc.*, 623 F.3d 163, 166–67 (3d Cir. 2010); *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 419 (3d Cir. 2005); *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 136 (3d Cir. 2000); *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 199–200 (3d Cir. 1998).

A PACA trust "is imbued with an unusual 'floating' characteristic, i.e., it applies to *all* of Debtor's produce related inventory and proceeds thereof, regardless of whether [one produce supplier] or another produce supplier was the source of such inventory." *In re Fresh Approach, Inc.*, 51 B.R. 412, 422 (Bankr. N.D. Tex. 1985) (emphasis in original); *see also* 7 U.S.C. § 499e(c)(2); 7 C.F.R. § 46.46(b); *Weis-Buy Services, Inc.,* 411 F.3d at 420; *In re Kornblum & Co., Inc.*, 81 F.3d 280, 284 (2d Cir. 1996); *Sanzone-Palmisano Co. v. M. Seaman Enters., Inc.,* 986 F.2d 1010, 1012–14 (6th Cir. 1993). Produce buyers need not segregate PACA trust assets from non-PACA trust assets, and a PACA trust beneficiary need not perform any tracing or otherwise demonstrate that its produce or funds were used to obtain any particular asset. *In re Kornblum & Co., Inc.,* 81 F.3d at 286 ("[A] single

PACA trust exists for the benefit of all of the sellers to a Produce Debtor, and continues in existence until all of the outstanding beneficiaries have been paid in full."); *Sanzone-Palmisano Co.,* 986 F.2d at 1012 ("[T]he trust beneficiary need not prove that it, and not another produce supplier, was the source of the produce or produce-related assets."); *In re Fresh Approach, Inc.*, 51 B.R. at 422. Once funds are commingled, such as when a produce buyer deposits proceeds from the sale of produce and proceeds from the sale of non-produce items into the same bank account, every asset acquired or paid for with commingled funds—including the commingled funds themselves—is presumed to be a PACA trust asset. *Sanzone-Palmisano Co.,* 986 F.2d at 1014.

Thus, each dollar from the sale of produce is to be held in trust for the benefit of all unpaid produce suppliers, and every item acquired with a produce dollar is presumed to be a PACA trust asset to be held for the benefit of the produce buyer's produce suppliers. *Sanzone-Palmisano Co.,* 986 F.2d at 1012–13; *Tanimura & Antle, Inc.*, 222 F.3d at 136; *In re Kornblum & Co., Inc.*, 81 F.3d at 286–87; *In re Atlantic Tropical Market Corp*., 118 B.R. 139, 141–42 (Bankr. S.D. Fla. 1990) ("[A]ny assets purchased while the fund is in existence will be assumed to be purchased with trust fund assets and will therefore become part of the trust fund assets.").

The PACA trust is subject to general principles of trust law, unless such principles conflict with the PACA statute, Congressional intent, or PACA's implementing regulations. *Pac. Int'l Mktg., Inc. v. A & B Produce, Inc.*, 462 F.3d 279, 285 (3d Cir. 2006). In the event of a bankruptcy, PACA trust assets are excluded from the debtor's bankruptcy estate. *In re Long John Silver's Restaurants, Inc.*, 230 B.R. 29, 32 (Bankr. D. Del. 1999); 11 U.S.C. § 541(d); 49 Fed. Reg. 45735, 45738 ("If a buyer or receiver declares bankruptcy . . . trust assets are not to be considered part of the estate to be distributed to other creditors or sold until all trust beneficiaries have been paid."); *In re Fresh Approach, Inc.,* 51 B.R. at 419–20 (discussing PACA trust and noting "[t]hat the corpus of a trust is not property of the estate is so widely accepted as to be beyond dispute.").

"[T]he trust provision also straightforwardly provides unpaid suppliers with priority over secured lenders with regard to PACA trust assets *held in trust* by produce purchasers. It effectively vitiates a lender's security interest in trust assets *held by produce purchasers* vis a vis unpaid produce suppliers." *Consumers Produce Co. v. Volante Wholesale Produce, Inc.*, 16 F.3d 1374, 1379 (3d Cir. 1994) (emphases in original). The Third Circuit, in considering the impact of the PACA trust on secured lenders, noted that Congress found the PACA trust "will not be a burden to lending institutions" because it "will be known to and considered by prospective lenders in extending credit." *Weis-Buy Servs., Inc.*, 411 F.3d at 420.

Courts, including the Third Circuit, have followed the statute's purpose by holding that PACA trust beneficiaries' rights are superior to secured lenders in PACA trust assets. *See Pac. Int'l Mktg., Inc.*, 462 F.3d at 285 ("PACA trust beneficiaries are entitled to full payment before trustees may lawfully use trust funds to pay other creditors.") (internal quotation omitted); *Idahoan Fresh*, 157 F.3d at 199 (unpaid produce suppliers' interest in PACA trust assets "superior to that of a perfected, secured creditor"); *Consumers Produce Co.*, 16 F.3d at 1379 (a secured creditor's interest is subject to PACA beneficiaries in PACA trust assets); *In re Kornblum & Co.*, 81 F.3d at 284–86 (PACA beneficiary may claim trust property ahead of creditors holding security interests); *Endico Potatoes, Inc. v. CIT Group/Factoring*, 67 F.3d 1063, 1067 (2d Cir. 1995) (PACA sellers maintain a right to recover "superior to all creditors, including secured creditors"); *Nickey Gregory Co., LLC v. AgriCap, LLC*, 597 F.3d 591, 599 (4th Cir. 2010) (recognizing that Congress chose to prioritize protecting produce sellers over secured lenders); *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 413 (5th Cir. 2003) (unpaid produce "seller's claims prime those of other secured and unsecured creditors for the full amount of the claim"); *In re Lombardo Fruit & Produce Co.*, 12 F.3d 806, 809 (8th Cir. 1993) ("PACA's trust provision has the precise effect Congress intended; namely, in the event the seller does not receive payment, the seller is elevated to a priority position above that

of all the buyer's secured creditors."); *S & H Packing & Sales Co. v. Tanimura Distrib., Inc.*, 883 F.3d 797, 811 (9th Cir. 2018) (*en banc*) ("Congress has made a clear policy choice giving the PACA creditors priority over secured creditors. We must keep PACA's purpose in mind when reviewing transactions that may in substance limit that congressional policy."); *C.H. Robinson Co. v. Tr. Co. Bank, N.A.,* 952 F.2d 1311, 1315 n.3 (11th Cir. 1992) ("Trust assets are actually exempt from the bankruptcy estate, and all trust beneficiaries must be paid in full before any remainder is distributed to secured creditors.").

The uniform authority confirms that the Bankruptcy Court did not create a novel priority rule or expand PACA beyond its intended scope. It applied PACA exactly as Congress designed and as courts have consistently enforced it: PACA trust beneficiaries must recover ahead of secured lenders. Appellants' arguments in favor of subordination of the PACA Creditors would resurrect the very financing problem Congress enacted PACA's trust provision to solve.

**2. The Bankruptcy Court Correctly Applied the *Kornblum* Framework**

After a one-day trial, during which Appellants had ample opportunity to present their case. the Bankruptcy Court concluded that "all of the funds now held by the trustee are held in statutory trust for the benefit of the plaintiffs." (Op. 3.) Something Sweet was operating subject to the PACA trust since at least 2003, sixteen years before Appellants entered into their lending relationship with Something Sweet in 2019. (Op. 13, 18). The assets which Appellants assert constituted their collateral were owned by Something Sweet prior to the 2019 loans. (Op. 16.) Those facts are not challenged on appeal.

As the Bankruptcy Court explained, under the standard set forth in *Kornblum*, it was Appellants' burden to establish that the assets in which they asserted a security interest were free from the PACA statutory trust. (*See* Op. 14 (citing *In re Kornblum & Co., Inc.,* 81 F.3d at 285).) To do so, Appellants were required to show one of three things: (1) no PACA trust existed when the asset

was acquired; (2) although a PACA trust existed at the time, the asset was not acquired with trust assets; or (3) although a PACA trust existed when the asset was acquired, and the asset was acquired with trust assets, all unpaid sellers of produce were paid in full prior to the transactions involving the unpaid PACA trust creditors herein. (*Id.*) Appellants failed to make the required showing. (Op. 16–19.)

On appeal, Appellants argue that, as applied by the Bankruptcy Court, the PACA trust is contrary to "economic reality" and "operated as a legal fiction with the extraordinary power to retroactively recharacterize assets and extinguish otherwise valid and perfected security interests without any evidence of dissipation." (*See* D.I. 25 at 37–38.) But as the PACA Creditors point out, Appellants' characterization of the "economic reality" is backwards. The PACA trust did not arise at bankruptcy, or when the adversary proceeding was filed, or when the Bankruptcy Court made its decision. The economic reality is that Something Sweet was operating subject to the PACA trust well before Appellants made their loans, and its assets were already impressed with the PACA trust. This economic reality confirms the Bankruptcy Court's ruling: a secured creditor which lends to a PACA-obligated borrower without accounting for the PACA trust is not a victim of statutory formalism. A lender which ignores a decades-old federal statutory trust when underwriting a loan to a produce buyer cannot claim constitutional injury when that trust is enforced as Congress designed.

Appellants' contention that their security interest was extinguished "without evidence of dissipation" is misplaced. (D.I. 12 at 38.) The Bankruptcy Court was not required to find dissipation to determine that the Funds held by the Trustee were impressed with the PACA trust. Something Sweet was operating subject to PACA's trust provision since at least 2003, and Appellants bore the burden to prove that the Funds were derived from a non-trust source or otherwise free of the trust.

Appellants' argument hinges on treating the PACA trust as a *post hoc* bankruptcy remedy, but as the PACA Creditors explain, the PACA trust is actually a pre-bankruptcy statutory trust arising by

operation of federal law.

Appellants repeatedly characterize the Bankruptcy Court's ruling as impairing or eliminating their secured-creditor rights. (D.I. 25 at 11–12, 23.) Appellants also argue that the Bankruptcy Court "recharacterized" their collateral as trust property. *(Id.* at 27–28.) Appellants further invoke Bankruptcy Code provisions governing adequate protection, priming liens, and surcharge of collateral as if the Funds were estate property subject to their secured rights. (*Id.* at 47–48.) But as the PACA Creditors point out, these characterizations fundamentally misstate what PACA's trust provision does and does not do. PACA's trust provision does not strip secured creditors of any property or rights. The PACA trust prospectively defines by statute a trust that arises by operation of law when a produce purchaser buys produce on credit. It does not suddenly arise at bankruptcy or apply retroactively. Thus, the Bankruptcy Court did not transform Appellants' collateral into trust property or destroy Appellants' liens. The Judgment did not determine or impair whatever claim Appellants may hold against the bankruptcy estate. Rather, the Judgment determined only that the Funds were PACA trust assets, not estate property available to satisfy Appellants' asserted secured interest. Once the PACA Creditors' superior trust rights exhausted the Funds, there was no remaining value in those Funds to support Appellants' secured claim. The Court agrees that the Bankruptcy Court correctly applied PACA and the *Kornblum* framework.

### 3. The PACA Trust Is a Statutory Trust, Not a Constructive Trust

Appellants incorrectly analogize the PACA trust to a constructive trust, citing *XL/Datacomp v. Wilson (In re Omegas Group)*, 16 F.3d 1443, 1452 (6th Cir. 1994). That decision addressed constructive trusts, which are judicially created after the fact to prevent unjust enrichment. *Omegas Group*, 16 F.3d at 1452–53. A constructive trust does not exist until a court creates it, and it can operate retroactively to remove assets from the bankruptcy estate. *Id.* A PACA statutory trust is distinguishable, as it is a statutory trust created by Congress which is effective by operation of federal

law when a buyer purchases produce on credit. It exists independently of any judicial declaration. The *Omegas Group* case is therefore inapposite.

Appellants' reliance on *Spring Valley Produce Inc. v. Forrest (In re Forrest)*, 47 F.4th 1229, 1246 (11th Cir. 2022) and *Driscoll Potatoes, Inc. v. N.A. Produce Co*., 765 F. Supp. 174, 178 (D.N.J. 1991) is similarly misplaced. (D.I. 12 at 37–38.) In *Forrest*, the Eleventh Circuit addressed whether a PACA trustee is acting in a fiduciary capacity in the context of defalcation under section 523(a)(4) of the Bankruptcy Code. That issue is not before the Court here, and the Eleventh Circuit specifically noted that its holding was limited. *In re Forrest*, 47 F.4th at 1241 ("We also emphasize that our holding today is limited to the narrow meaning of 'fiduciary capacity' in the context of § 523(a)(4)'s exception to discharge.") Appellants cite *Driscoll* for the proposition that the Secretary of Agriculture is vested with the power to enforce PACA's trust provision, including via injunctive relief, and that this proposition somehow supports Appellants' argument that PACA is a retroactive legal construct. (D.I. 12 at 38.) *Driscoll* does not help Appellants.

### B. Enforcing PACA's Statutory Trust Does Not Effect a Taking[3]

Appellants argue that the Bankruptcy Court's decision violated the Takings Clause of the Fifth Amendment, which provides "[N]or shall private property be taken for public use, without just compensation." U.S. Const. Am. V. Appellants' constitutional challenges rest on the same flawed premise that the PACA trust arose retroactively and destroyed pre-existing property rights.

[3] The PACA Creditors assert that, to the extent Appellants now seek a broader ruling that PACA's statutory trust is facially unconstitutional or categorically unconstitutional whenever applied against secured lenders, that theory was not developed below and is waived. They argue Appellants preserved, at most, an as-applied challenge to the Bankruptcy Court's application of PACA to these Funds on this record, and the as-applied challenge fails because Appellants never held a superior property interest in PACA trust assets. As the Court agrees that Appellants' broader constitutional arguments fail on the merits, the Court doesn't address the waiver argument.

### 1. There Was No Taking Because Appellants Lacked a Legally Cognizable Interest in the Funds

The party asserting a physical or regulatory taking must have a "legally cognizable property interest." *In re Trs. of Conneaut Lake Park, Inc.*, 855 F.3d 519, 526 (3d Cir. 2017). Appellants' takings argument fails at the outset because it rests on the false premise that Appellants had a superior property interest in the Funds.

The PACA trust arises automatically upon the buyer's receipt of produce and imposes a trust on all produce-related assets and proceeds. 7 U.S.C. § 499e(c)(2); *Tanimura & Antle, Inc.*, 222 F.3d at 136; *Consumers Produce Co.*, 16 F.3d at 1379; *In re Kornblum & Co.*, 81 F.3d at 286; *In re Long John Silver's Rests., Inc.*, 230 B.R. at 32. A PACA-obligated produce buyer holds only bare legal title to assets impressed with the PACA trust, while unpaid PACA sellers retain the equitable interest until full payment is received. 7 U.S.C. § 499e(c)(2); *In re Kornblum & Co.*, 81 F.3d at 284. The interests of any secured creditor in PACA trust assets are subject and subordinate to the rights of PACA trust beneficiaries. *Consumers Produce Co.*, 16 F.3d at 1379.

In *In re Trustees of Conneaut Lake Park, Inc.*, the Third Circuit started its takings analysis by first asking whether a claimant objecting to payment of taxes prior to its recovery of insurance policy proceeds had a "legally cognizable property interest." *Id.* at 526. The terms of legislation enacted prior to the policy at issue provided that any payment of insurance proceeds to the claimant was conditioned on first satisfying delinquent taxes owed on the insured property. *Id.* Because the claimant's rights were subordinate to the taxing authority, it had no takings claim. *Id.* Similarly, here, Appellants' interest in the Funds was always subject and subordinate to the pre-existing PACA trust. Because Appellants have no cognizable interest in the Funds, and their takings claim must fail.

### 2. Enforcement of the PACA Trust Is Not a Taking

Even if it were appropriate to apply a takings analysis, Appellants would still lose. The party

challenging an alleged unconstitutional government action "bears a substantial burden" and not every governmental action that impairs property rights is a "taking" under the Constitution. *Eastern Enter. v. Apfel*, 524 U.S. 498, 523 (1998). When evaluating a takings claim, the Court must determine whether to employ the test for a classic, physical taking or the test for a regulatory taking. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 323 (2002). A PACA trust does not present a "classic taking" in which the government physically appropriates private property for public use. *Eastern Enter.,* 524 U.S. at 522–23; *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 225 (1986); *Concrete Pipe & Prods. of California, Inc. v. Constr. Laborers Pension Tr. for S. California*, 508 U.S. 602, 643 (1993); *King v. United States*, 165 Fed. Cl. 613, 618 (2023), *aff'd,* 151 F.4th 1348 (Fed. Cir. 2025) (holding the "physical-takings test is inapplicable to the plaintiffs' claims because the federal government has neither appropriated the plaintiffs' property nor occupied it.").[4]

Accordingly, even if a takings analysis did apply, the standard to evaluate the claim is under the regulatory taking framework from *Penn Cent. Transp. Co.*, 438 U.S. at 124. The Supreme Court set forth three factors with "particular significance" to consider when evaluating a potentially unconstitutional regulatory "taking" under the Fifth Amendment: (1) the "economic impact of the regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the governmental action." *Penn Cent. Transp. Co.*, 438 U.S. at 124; *Connolly*, 475 U.S. at 225; *Eastern Enter.*, 524 U.S. at 523–24.

[4] Appellants cite *Armstrong v. United States*, 364 U.S. 40, 49 (1960) for the proposition that the government cannot recharacterize property rights and eliminate a protected property interest without compensation. (D.I. 12 at 27.) *Armstrong* was decided in 1960, 18 years before the Supreme Court's decision in *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978) discussing the standard to evaluate a regulatory, as opposed to physical, takings claim. In *Armstrong*, the government physically took shipbuilding materials without paying for them, rendering the materialmen's liens unenforceable because of the sovereign immunity of the government and its property from suit. 364 U.S. at 48. The Court found that the government was required to pay just compensation for the value of the liens lost by the claimant for which the government was the direct, positive beneficiary. *Id.* at 49. Here, the government has not taken anything from Appellants for public use.

With respect to the first factor—the economic impact of the regulation on Appellants—issues may arise under the Takings Clause when there is economic regulation which permanently deprives a party of assets or property. *See Eastern Enter.,* 524 U.S. at 523. Here, any lien rights Appellants had with respect to the Debtors' assets were always subject and subordinate to the rights of Something Sweet's PACA trust beneficiaries. *Consumers Produce Co.*, 16 F.3d at 1379; *see also A & J Produce Corp.*, 542 F.3d at 58. Appellants assert that PACA's trust provision "destroyed" their interests by leaving no assets available for their claims. (D.I. 12 at 23–24.) But these interests were not "destroyed," they were merely junior to the rights of PACA trust beneficiaries. There can be no taking of a property interest that was encumbered by a federal statute before Appellants extended a dollar of credit, and Appellants' loans and security agreements cannot contractually eliminate the operation of PACA's statutory trust, which was in effect at the time of the loans, and which Congress decided to place ahead of lien rights as a matter of public policy. Thus, the economic impact factor does not support the finding of a regulatory taking.

With respect to the second factor—the extent to which the regulation has interfered with distinct investment-backed expectations—the regulatory status at the time a party acquires a property interest governs the reasonableness of its investment-backed expectations. "[D]istinct, investment-backed expectations are reasonable only if they take into account the power of the state to regulate in the public interest." *Nekrilov v. City of Jersey City*, 45 F.4th 662, 674–75 (3d Cir. 2022). The current version of PACA was enacted in 1984. Because Something Sweet was operating subject to PACA's trust provision no later than 2003 when it purchased produce on credit, Appellants' security interests in 2019 were always subject and subordinate to the PACA trust. Appellants' investment-backed expectations cannot be reasonable if they ignore the regulatory framework existing when they extended credit. *Id.* The Bankruptcy Court correctly determined that Appellants could have no "reasonable investment-backed expectation" that their security interests would prime the interests of

PACA trust beneficiaries. (Op. 19–21.)

With respect to the third factor, the Court agrees that PACA's character is not in the nature of a regulatory taking. "A 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Cent. Transp. Co.*, 438 U.S. at 124 (internal citation omitted); *see also B & G Const. Co., Inc. v. Director, Office of Workers' Comp. Programs,* 662 F.3d 233, 263 (3d Cir. 2011). This factor does not support Appellants' position that the PACA trust is an unconstitutional taking. Appellants rely on *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589 (1935), for the proposition that Congress cannot destroy a secured lien through legislation (D.I. 12 at 7), but that decision involved retroactive legislation that destroyed lien interests which existed prior to the legislation at issue. *Radford*, 295 U.S. at 590. PACA does not destroy pre-existing lien rights and is not retroactive legislation. PACA's trust provision has been in effect since 1984. Something Sweet was operating subject to PACA since 2003, 16 years before Appellants' loans were made. Application of the PACA trust does not strip liens which predated the statute, as was the case in *Radford*. The *Penn Central* factors do not support Appellants' position.

In sum, Appellants fail to show that PACA's trust provision operates as an unconstitutional physical taking or as a taking via regulatory interference with property rights.

### C. The *Kornblum* Framework Does Not Violate Procedural Due Process

As explained above, once the Bankruptcy Court determined that Something Sweet had been operating subject to a PACA trust since at least 2003, the Bankruptcy Court went on to consider whether any of the Funds were outside of that trust by applying the burden shifting analysis adopted

by the Second Circuit in *Kornblum*.[5] On appeal, Appellants argue that the *Kornblum* burden-shifting framework is unconstitutional because it "violates the Fifth Amendment's guarantee to procedural due process by requiring appellants to disprove the invasion of their property rights." (D.I. 12 at 43.)

Regardless of the merits of that argument, Appellants didn't raise it with the Bankruptcy Court and therefore cannot assert it for the first time on appeal. Indeed, as the Bankruptcy Court noted, although Appellants argued that the PACA Creditors had not established the *prima facie* case required to shift the burden to the Appellants (*see, e.g.,* Adv. D.I. 82 at 14), the parties ***agreed*** in the bankruptcy proceedings that the burden-shifting analysis set forth in *Kornblum* is applicable here. (Op. 14; *see also, e.g.,* Adv. D.I. 81 (Trial Tr.) at 192; Adv. D.I. 82 at 17.) Appellants point to nowhere in the record where they challenged the burden-shifting standard adopted by *Kornblum* as violative of procedural due process. Accordingly, the Court does not consider Appellants' procedural due process argument.[6]

**D. Appellants' Remaining Arguments Are Unavailing**

Appellants suggest that the *Kornblum* framework should be revisited because that case cited *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which has now been overruled. The Court will not consider that argument because Appellants agreed in the

---

[5] See Section IV.A.2, *supra*.

[6] In any event, the Court doubts the merits of Appellant's argument. Having affirmatively invoked the Bankruptcy Court's jurisdiction and requested a determination that the Funds belonged to them, Appellants cannot contend that their due process rights were violated by being required to prove the claim they asserted. The *Kornblum* framework requiring the party challenging the scope of the trust to carry the burden is reflective of the actual, primary, private interests at stake for PACA beneficiaries. It further is a practical necessity reflecting the fact that secured lenders' interests are junior to PACA trust beneficiaries and, should they contend that funds are free from the trust, they should be required to carry that burden. PACA creates a non-segregated floating trust in which commingling is contemplated. If unpaid sellers were required to trace each dollar through the buyer's accounts before recovering, the statutory trust would collapse into the tracing regime Congress rejected. *See, e.g.*, H.R. Rep. 98-543, 4, 1984 U.S.C.C.A.N. 405, 406-07.

bankruptcy proceedings that the *Kornblum* framework was applicable here. (Op. 14.)

Appellants also invoke various Bankruptcy Code provisions in an attempt to establish priority over the PACA Creditors, but those arguments fail for the same fundamental reason: PACA trust assets are not property of the bankruptcy estate. PACA trust assets are governed by traditional trust principles and are excluded from estate property under section 541(d); a perfected PACA trust beneficiary is entitled to payment in full from those assets before any distribution to secured or unsecured creditors. 7 U.S.C. § 499e(c)(2); 11 U.S.C. § 541(d); *In re Long John Silver's Rests., Inc.*, 230 B.R. at 32; *In re Kornblum & Co.*, 81 F.3d at 284–86. Thus, when a bankruptcy court enforces PACA, it does not skip priorities within the bankruptcy estate. It recognizes that the assets at issue are not available for distribution to estate creditors ahead of unpaid PACA trust beneficiaries in the first place. Because the Funds were always PACA trust assets and not estate property, none of the bankruptcy priority doctrines, adequate protection provisions, or secured-creditor principles Appellants invoke have any application here.

Sections 506(a) and 506(b), section 1111(b), the absolute priority rule, and related reorganization doctrines address the treatment, valuation, allowance, or priority of claims against estate property. Because Appellants' rights were subordinate to those of the PACA Creditors, the Funds were not available for distribution to Appellants under secured-claim or plan-priority principles. Thus, Appellants' reliance on cases involving structured dismissals, critical vendors, adequate protection, and other priority deviations is misplaced. Those cases address distributions of estate property or judicial efforts to reorder estate priorities. PACA does not depend on equitable discretion, judicial preference, or a case-specific deviation from the Bankruptcy Code. It is a federal statutory trust enacted by Congress to define the property interests of produce buyers, unpaid produce sellers, and lenders. The Bankruptcy Court therefore did not depart from the Bankruptcy Code; it applied PACA and section 541(d) together.

Appellants' reliance on *Jevic Holding Corp.* is also misplaced. In *Jevic*, the Supreme Court rejected a structured dismissal which provided for distributions that deviated from the priority scheme set forth in the Bankruptcy Code without the consent of the impacted creditors. *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 454–55 (2017). In deciding *Jevic*, the Supreme Court discussed Congressional intent in setting out the Bankruptcy Code's priority system, and that, had Congress intended to permit disruption of that system via structured dismissals, it would have explicitly said so. *Id.* at 465 ("The importance of the priority system leads us to expect more than simple statutory silence if, and when, Congress were to intend a major departure."). But, the case here does not involve a structured dismissal. It determines the rights of creditors under two separate, co-equal federal statutes. By enacting the remedy of a statutory trust, Congress expressly provided that PACA trust beneficiaries are to receive payment ahead of secured lenders. 7 U.S.C. § 499e(c)(1).

Appellants' argument that the Bankruptcy Court improperly relied on "equitable discretion" to find in favor of the PACA Creditors also fails. Appellants cite *In re Kmart Corp*., 359 F.3d 866, 868 (7th Cir. 2004). (D.I. 12 at 41.) But in that case, the debtor sought to use estate funds to pay selected prepetition "critical vendors" as a matter of equitable discretion pursuant to section 105(a) of the Bankruptcy Code, and the Seventh Circuit rejected the notion that certain creditors may be preferred outside of the priority scheme based on notions of fairness. *Id.* at 871. There is no indication here that the Bankruptcy Court relied on equitable discretion in finding in favor of the PACA Creditors, nor did it mirror the critical vendor doctrine in rendering its decision, as is argued by Appellants. (D.I. 12 at 41.)

Appellants' reliance on *United States v. Security Industrial Bank*, 459 U.S. 70, 78–82 (1982) is also misplaced. That decision addressed whether a Bankruptcy Code lien-avoidance provision could be applied retroactively to destroy liens that were perfected before the statute was enacted. *Id.* Here, by contrast, PACA's trust provision existed decades before Appellants extended credit, and

Something Sweet was operating subject to PACA before Appellants' lending relationship began. Appellants' security interests were therefore created subject to PACA's preexisting statutory trust.

## V. CONCLUSION

For the reasons set forth above, the Bankruptcy Court correctly applied PACA's trust provision, and the Judgment will be affirmed. The Court will issue a separate Order consistent with this Opinion.